## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONALD E. DUBERRY**        ) | |
| ) | |
| **Plaintiff,**       ) | |
| ) | |
| **v.**       ) | **Civil Action No. 04-1652 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.*     ) | |
| ) | |
| **Defendants.**      ) | |
| ) | |

## MEMORANDUM OPINION

Ronald E. DuBerry worked as a corrections officer for the District of Columbia Department of Corrections ("DOC") for many years, either at the prison in Lorton, Virginia ("Lorton"), or the District of Columbia Central Detention Facility ("D.C. Jail"). He lost his job on March 18, 2002,[1] when he was affected by a reduction in force ("RIF") at the DOC, occasioned by the closing of Lorton. Despite his efforts since that time, Mr. DuBerry has been unable to obtain re-employment with the DOC. He complains that the District of Columbia has discriminated against him because of his race (African-American), disability (diabetes), and age (unspecified), retaliated against him, subjected him to unlawful harassment and violated his civil rights under federal laws. Mr. DuBerry moves for summary judgment in his favor. The District of Columbia moves to dismiss.

## I. BACKGROUND

Mr. DuBerry is proceeding *pro se*. He has filed a motion for summary judgment,

---

[1] In his complaint, Mr. DuBerry states that he received a notice of termination on March 1, 2001 and was terminated on March 15, 2001. However, Mr. DuBerry's EEOC complaint form reflects that he was terminated on March 18, 2002. Accordingly, the court will proceed under the assumption that Mr. DuBerry was terminated on March 18, 2002 and the date reflected in his complaint is an error.

asserting that "[t]here are no genuine issues to be litigated."  Plaintiff's Motion for Summary

Judgment ("Pl.'s Mot.") at 1.  Mr. DuBerry attached his complaint to his motion for summary

judgment as his brief in support of the motion and has also submitted some supporting

documentation.  The Court draws the following facts from the complaint:

- Mr. DuBerry was assigned to the Youth Center at Lorton on the Number 2 Shift (7:30
  am to 4:00 pm) in June 1997.  At that time, he was a newly-promoted Captain.
  Compl. ¶ 2(1).

- Mr. DuBerry was diagnosed with diabetes on January 17, 1998, which required him
  to regulate his food intake and to take medication.  Compl. ¶ 2(2)(a).

- Mr. DuBerry was reassigned to the Number 3 Shift (3:30 p.m. to 12 midnight) on
  June 30, 1998.  The shift change interfered with his medical routine so he requested
  to be returned to the Number 2 Shift.  This request was denied on July 13, 1998.
  Compl. ¶ 2(2)(b) & (c)).

- Mr. DuBerry filed a discrimination complaint based on alleged disability
  discrimination in August 1998, without success in obtaining a change to his shift.
  Compl. ¶ 2(2)(d).

- On October 18, 1998, Mr. DuBerry was assigned to the Number 1 Shift (11:30 p.m.
  to 8 a.m.), which did not cause problems with controlling his diabetes.  He was
  unable to obtain restoration of sick leave that had been used when he was on the
  Number 3 Shift.  Compl. ¶ 2(2)(e).

- In November 1999, Mr. DuBerry filed a complaint with the D.C. Office of Human
  Rights ("OHR"), charging the DOC with discrimination, disparity in treatment, and

retaliation. Compl. ¶ 2(2)(i).

- On August 15, 1999, Mr. DuBerry was transferred from Lorton to the D.C. Jail but remained Shift Commander for the Number 1 Shift. Compl. ¶ 2(2)(g).

- On January 2, 2000, Mr. DuBerry was transferred back to Lorton and assigned to the Number 3 Shift. When he was unable to obtain a different shift, he filed a complaint with the OHR, charging the DOC with disability discrimination, harassment and retaliation. Compl. ¶ 2(2)(h).

- Mr. DuBerry participated in a meeting at the OHR on February 18, 2000, concerning his November 1999 discrimination complaint. At that time, the DOC agreed to assign him to the Number 1 Shift at the maximum security facility at Lorton. Compl. ¶ 2(2)(i).

- Lorton's Maximum Security Facility was closed in late 2000 and Mr. DuBerry was transferred to the D.C. Jail on December 3, 2000, as the shift commander on the Number 1 Shift. Compl. ¶ 2(2)(j).

- Because of the retirement of another officer, Mr. DuBerry was informed that he would be reassigned to the Number 3 shift, effective June 29, 2001. When he complained to his supervisors, he was returned to the Number 1 Shift and other officers took command of the Number 3 Shift. Compl. ¶ 2(2)(j).

- However, Mr. DuBerry was notified on January 10, 2001, that he was being reassigned to the Number 3 Shift. Mr. DuBerry immediately complained to his superiors but got no response. On January 24, 2001, he filed an informal complaint with the OHR, complaining of retaliation, harassment and discrimination "for

continuously [sic] reassignment to the Number Three Shift (3:30 p.m. to 12 midnight) as Shift Commander knowing that it constituted a direct hardship and hazard to my health." Compl. ¶ 2(2)(l).

- On Friday, March 1, 2002, Mr. DuBerry received a 15-day notice of termination from his position as a supervisory correctional officer with DOC, effective on March 18, 2002. He alleges that he was transferred to the Number 3 Shift because that position was targeted to be abolished in the RIF while his Number 1 Shift position was not. *Id.* ¶ 2(m). ("Later it was discovered that I had been moved from my assignment on the Number One Shift (11:30 to 8:00 a.m.), as the Shift Comander[,] [a] non-abolished position[,] and assign[ed] to the number three shift (3:30 p.m. to 12 midnight) as Shift Commander[,] a position that the department knew was either an abolished position, or one that had been targeted to be abolished."). Compl. ¶ 2(2)(m).

- In June or July 2002, Lieutenant William Burns, a non-disabled white American in his early to mid-forties, younger than Mr. DuBerry, was appointed to the position of Acting Shift Commander on the Number 1 Shift, the position that Mr. DuBerry had held and from which he had been removed "because the Department had allegedly abolished the position" in the RIF following the closure of Lorton. Compl. ¶ 2(2)(n).

- Mr. DuBerry filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") on December 3, 2002. Apparently, this complaint was intended to be an amendment to his earlier charge, filed in November 1999 with the OHR, and it added charges of race and age discrimination to his

previous disability claim.  On July 27, 2004, the EEOC issued a right-to-sue letter to him.  *See* Compl. ¶ 20 ("DuBerry filed EEOC complaint December 3, 2002 amended November 19, 1999 to include[] Age and Race Discrimination. . . . On July 27, 2004 the U.S.E.E.O.C. issued plaintiff a right to sue letter.").

• In late December 2002, Mr. DuBerry wrote to the Director of the District of Columbia Office of Personnel applying for a position recently vacated at the D.C. Jail.  Mr. DuBerry stated that he had been the last Captain removed from his position and should be considered for the position in the Management Supervisory Service ("MSS"), for which he qualified to be converted from his former competitive-service position.  The Complaint does not indicate whether Mr. DuBerry ever received a response to his letter.  Compl. ¶ 2(2)(o).

• The DOC posted a vacancy announcement for a supervisory correctional officer at the D.C. Jail on February 6, 2003.  Mr. DuBerry applied for the job but did not receive it.  On July 13, 2003, six lieutenants working at the DOC were promoted to the rank of captain.  Mr. DuBerry complains that he was not considered for a captain's position, although at least one of the promoted persons was younger than he and one or more were white.  Compl. ¶ 2(2)(p).

Mr. DuBerry's complaint, filed on September 27, 2004, has three counts.  Count I alleges that the DOC failed to follow proper RIF procedures -- that it favored younger and/or white corrections officers -- and that it committed a continuing tort by acts of discrimination from November 14, 1997 to the present.  *See* Compl. ¶¶ 23-24.  Count II alleges that Mr. DuBerry was

RIFed in disregard of proper law and procedure and due to his race, disability and age.  *Id.* ¶ 26. Count III alleges that the DOC continuously moved him to the Number 3 Shift because of his disability.  *Id.* ¶ 30.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

For the court to grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,  it must "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The primary issue in resolving a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support his or her claims.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183 (1984).  At this early stage of the proceedings, the court must accept as true all of the plaintiff's well-pled factual allegations and draw all reasonable inferences in favor of the plaintiff.  *See Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).  Although the court must construe the complaint in the light most favorable to the plaintiff, it "need not accept inferences drawn by the plaintiff if such inferences are not supported by the facts set out in the complaint."  *Kowal*, 16 F.3d at 1276.  In addition, the court need not accept the plaintiff's legal conclusions as true.  *See Alexis*, 44 F. Supp. 2d at 337.

### B. Summary Judgment

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c)).  Summary judgment is not

a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and

expeditiously.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  In determining whether a

genuine issue of material fact exists, the court must view all facts and reasonable inferences in the

light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*,

475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Only factual disputes

that are capable of affecting the substantive outcome of the case under the governing law are

deemed  "material" and "genuine."  *See Anderson*, 477 U.S. at 248; *Laningham v. United States*

*Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### III.  ANALYSIS

Mr. DuBerry alleges that the DOC engaged in several discriminatory practices in

violation of his rights under Title VII, the Americans with Disabilities Act ("ADA"), 42

U.S.C.§ 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), and the policies of the District

of Columbia.  Defendant argues that Mr. DuBerry's complaint should be dismissed because his EEO

charge of discrimination was not timely filed and because his claims are barred by the statute of

limitations.  *See* Defendant District of Columbia's Memorandum of Points and Authorities in

Support of Their Motion to Dismiss ("Def.'s Mem.") at 1.  After carefully considering the parties'

arguments, the Court concludes that Mr. DuBerry's ADA claims that relate to his employment at the

DOC will be dismissed because he failed to exhaust his administrative remedies.  However, Mr.

Duberry's additional ADA claims, and his Title VII and civil rights claims will not be dismissed

because, giving the plaintiff all reasonable inferences at this stage of the litigation, it appears that

they fall within the applicable statute of limitations period.  Finally, Mr. DuBerry's regulatory claims

-7-

will not be dismissed because the Defendant failed to address these claims in its motion to dismiss.

### A.  Mr. DuBerry's Title VII and ADA Claims

Mr. DuBerry filed his EEO charge with the EEOC on December 3, 2002, complaining that his selection for the RIF resulted from race and age discrimination.  Under Title VII, charges alleging discrimination must be filed within 180 days of the alleged unlawful employment practice or within three hundred days if the charging party has initially instituted proceedings with a State or local EEO agency.  *See* 42 U.S.C. § 2000e-5.  Mr. DuBerry's December 2002 EEO charge was beyond the 180th day after his termination.  However, Mr. DuBerry's prior OHR charge extended the applicable limitations period from 180 days to 300 days.  Mr. DuBerry's separation from his position, which he alleges was the result of race and age discrimination, occurred on March 18, 2002.  Thus, he filed his EEOC charge within the 300-day limitation period and these complaint allegations will not be dismissed.

Mr. DuBerry's charges of disability discrimination present a more complex history.  He states that after he was transferred to the Number 3 Shift, on August 7, 1998, he filed a discrimination complaint through the chain of command at the DOC based on alleged disability discrimination. Compl. ¶ 2(2)(d).  This matter appears to have been resolved on October 18, 1998, when Mr. DuBerry was assigned to the Number 1 Shift, although he was unable to recover the 208 hours of sick leave that he had taken while on the Number 3 Shift.  *Id.* ¶ 2(2)(e).  Since this matter never reached the point of a complaint with the OHR or the EEOC, Mr. DuBerry did not exhaust his administrative remedies and these allegations must be dismissed.  *See* 42 U.S.C. § 2000e-5(f)(1); *see also Park v. Howard University,* 71 F.3d 904, 907 (D.C. Cir. 1995) (noting that plaintiffs must exhaust administrative remedies before the EEOC prior to seeking relief in court); *Myers v.*

*Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").

Sometime in November 1999, Mr. DuBerry filed a disability discrimination charge with the OHR. This complaint also charged the DOC with harassment and retaliation. Compl. ¶ 2(2)(I). However, that matter appears to have been resolved at a meeting on February 18, 2000, at the OHR. *Id.* During the meeting, the DOC agreed to assign Mr. DuBerry to the Number 1 Shift at the maximum security facility at Lorton, "which was done." *Id.* The DOC made an accommodation for Mr. DuBerry's diabetic condition that was satisfactory. Thus, this matter is not actionable.

When Mr. DuBerry was again transferred to the Number 3 Shift on January 10, 2001, he complained through his chain of command but received no relief. *Id*. ¶ 2(2)(l). He filed an informal complaint with the DOC EEO Officer on January 24, 2001, concerning this re-assignment. *Id.* There is no indication that this informal complaint ever progressed to the OHR or the EEOC and Mr. DuBerry was RIFed on March 18, 2002. *Id*. ¶ 2(2)(m). Therefore, Mr. DuBerry failed to exhaust his administrative remedies as to this January 2001 complaint and cannot now bring it to court. *See* 42 U.S.C. § 2000e-5(f)(1).

Three of the allegations in Mr. DuBerry's complaint arose after his separation from the DOC: he complains that a younger, non-disabled, white man, William Burns, was appointed Acting Shift Commander of the Number 1 Shift in June or July 2002 in derogation of his rights. Compl. ¶ 2(2)(n). He also complains that the DOC refused to consider him for the MSS vacancy created by Captain William Brooks's departure in December 2002. *Id.* ¶ 2(2)(o). Finally, Mr. DuBerry complains that he was not appointed to the supervisory correctional officer vacancy

announcement (NO: FL (25) 03-05, Position Series: MS-0007) at the D.C. Jail in February 2003, and that younger officers, who were not as qualified as he, were promoted to captain in July 2003.  *Id.* ¶ 2(2)(p).

In his Reply, Mr. DuBerry states that he amended his December 2002 EEOC claim on November 19, 2003 "to include discrimination based on Race, Color, and Age." Plaintiff's Reply to Defendant's Motion to Dismiss ("Pl.'s Reply") at ¶ 3.  The EEOC's right-to-sue letter is extremely broad; it does not set forth the particular allegations that can properly be the subject of Mr. DuBerry's lawsuit.  For that reason, at this time, the Court cannot determine whether any of Mr. DuBerry's post-separation allegations might have been timely raised with the EEOC and be subject to its right-to-sue letter.  At this stage of the litigation, the Court must draw all reasonable inferences in favor of the plaintiff.  *See Alexis*, 44 F. Supp. 2d at 337.  Furthermore, this court has an "obligation to construe *pro se* filings liberally . . . ."  *United States v. Byfield,* 391 F.3d 277, 281 (D.C. Cir. 2004); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers . . .").  Thus, Defendant's motion to dismiss these allegations (Complaint ¶¶ (2)(n), (o) & (p)) will be denied without prejudice.

### B.  Mr. DuBerry's Civil Rights Claims

In addition to his Title VII and ADA claims, Mr. DuBerry advances claims based on federal law and the Constitution alleging race, age and/or disability discrimination.  The federal claims are based on  42 U.S.C. § 1981 and 42 U.S.C. § 1983, which codify civil rights laws passed

in the aftermath of the Civil War and assure constitutional protections to all.[2]  Defendant urges the

Court to dismiss Mr. DuBerry's §§ 1981 and 1983 claims relating to his employment at the DOC

on the grounds that these federal claims are barred by the three-year statute of limitations for actions

for personal injury in the District of Columbia.  *See* D.C. Code § 12-301(8); *Owens v. Okure*, 488

U.S. 235, 249-250 (1989) ("[W]here state law provides multiple statutes of limitations for personal

injury actions, courts considering § 1983 claims should borrow the general or residual statute for

personal injury actions."); *see also Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416 (D.C.

Cir. 1986) (applying 3-year statute of limitations); *Carter v. District of* Columbia, 14 F. Supp. 2d

97, 100 (D.D.C. 1998) (same); *Harris v. Perini Corp.* 948 F. Supp. 4, 7 (D.D.C. 1996) (same).

While Defendant is correct that three years is the applicable statute of limitations, Mr.

DuBerry's claims should not be dismissed as untimely.  Defendant's argument that Mr. DuBerry's

---

[2]  Section 1981, in relevant part, provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Section 1983, in relevant part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

civil rights claims are time barred is based on an error in Mr. DuBerry's complaint that states that his separation from the DOC was effective in March 2001. *See* Def.'s Mem. at 6. However, Mr. DuBerry was actually employed by the DOC until March 18, 2002. *See supra* note1. Mr. DuBerry filed his complaint in this action on September 27, 2004. As a result, any alleged actions of discrimination that occurred after September 26, 2001, are within the applicable three-year statute of limitations.

Defendant also urges the Court to dismiss Mr. DuBerry's §§ 1981 and 1983 claims concerning the DOC's failure to reinstate him because they are well past the three-year limitation period. It asserts that "the only reasonable inference from the four corners of the plaintiff's complaint" is that he was denied reinstatement because of the "lingering effects of the allegedly discriminatory conduct complained of in the January 2000 complaint to OHR." Def.'s Mem. at 7. Be that as it may, Mr. DuBerry specifically complains that the District of Columbia discriminated against him in 2003 – within the limitations period – by failing to rehire him early in the year and then by promoting younger, white candidates in July 2003. These timely allegations cannot be dismissed.

### C.  District of Columbia Regulatory Claims

Finally, Mr. DuBerry alleges that his RIF failed to comply with personnel regulations and policies of the District of Columbia. *See* Compl. ¶¶ 11-14. Defendant's motion to dismiss does not address these claims. Therefore, they will not be dismissed.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in part and denied in part. The Court will dismiss Mr. DuBerry's ADA claims that relate to his employment at

the DOC because he failed to exhaust his administrative remedies.   However, Mr. Duberry's additional ADA claims, and his Title VII and civil rights claims, will not be dismissed.   The Court will also retain Mr. DuBerry's claims that Defendant failed to comply with District of Columbia personnel regulations and policies.   Plaintiff's Motion for Summary Judgment will be denied.   A separate Order accompanies this Memorandum Opinion.


Dated: September 20, 2005.


                                        _____/s/_____
                                        ROSEMARY M. COLLYER
                                        United States District Judge