## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **RONALD EUGENE DUBERRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 04-1652 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Ronald Eugene DuBerry alleges that the District of Columbia Department of
Corrections, by including him in a reduction in force ("RIF") and by refusing to rehire him,
violated (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*;[1]
(2) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (3) 42
U.S.C. § 1983 ("Section 1983"); (4) 42 U.S.C. § 1981 ("Section 1981"); and (5) the District of
Columbia Human Rights Act ("D.C. Human Rights Act"), D.C. Code § 2-1401 *et seq.*  Before
the Court are the District of Columbia's motion for summary judgment on all claims and Mr.
DuBerry's cross motion for partial summary judgment on his ADA claims.  For the reasons
explained below, the Court will grant the District's motion with respect to Mr. DuBerry's Title
VII claim, Section 1983 claim, and Section 1981 claim, deny the District's motion with respect
to all other claims, and deny Mr. DuBerry's cross motion for partial summary judgment on his
ADA claims.

---

[1]  On September 25, 2008, President Bush signed into law the ADA Amendments Act of
2008, Pub. L. No. 110-325, 122 Stat. 3553, expanding the scope of disabilities covered under the
ADA.  The amendments become effective January 1, 2009.  Accordingly, the amendments do not
appear to affect this case.

## I. BACKGROUND

Mr. DuBerry**,** a 56-year-old African American male, began working as a corrections officer for the District of Columbia Department of Corrections in 1985. In 1997, the Department promoted Mr. DuBerry to the rank of captain, a supervisory correctional officer, and assigned him to the Youth Center at the Lorton Correction Complex as the Shift Commander on the Number Two shift. The Department operates three shifts at its facilities: the Number One shift runs from 11:30 p.m. to 8:00 a.m.; the Number Two shift runs from 7:30 a.m. to 4:00 p.m.; and the Number Three shift runs from 3:30 p.m. to 12:00 a.m.

Mr. DuBerry was diagnosed with diabetes on January 17, 1998. Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem."), Ex. 1 (Ronald DuBerry Aff. ("DuBerry Aff.") ¶ 5). Mr. DuBerry's condition requires him to eat meals at designated times and prevents him from skipping meals. *Id.* ¶ 8. Based on the results of his blood sugar tests, Mr. DuBerry must often change his diet on short notice. *Id.* ¶ 10. Mr. DuBerry's strict eating and blood sugar testing schedule requires that he plan the timing of his meals in advance and not depart from the planned schedule. *Id.* ¶ 11. Deviation from the planned eating and blood-sugar-testing schedule could result in mild and severe bodily reactions, including blurred vision and sweating, as well as circulatory problems, heart disease, kidney failure, blindness, shock, and diabetic coma. *Id.* ¶ 7.

On June 30, 1998, the Department informed Mr. DuBerry that he would be transferred to the Number Three shift effective July 19, 1998. Mr. DuBerry requested an accommodation because he believed working the Number Three Shift would be incompatible with the diabetes treatment regimen prescribed by his physician. *Id.* ¶¶ 15, 16. The Department denied his accommodation request and transferred Mr. DuBerry to the Number Three Shift on July 19, 1998. Mr. DuBerry used 208 hours of sick leave during the three months that he

worked on the Number Three shift to accommodate his diabetes treatment regimen.  *Id.* ¶ 18.  In response to numerous accommodation requests, the Department transferred Mr. DuBerry to the Number One shift on October 18, 1998.  Mr. DuBerry was able to resume his normal diabetes treatment regimen while assigned to the Number One shift.  *Id.* ¶ 23.

On December 3, 2000, the Department transferred Mr. DuBerry to the Number One shift at the D.C. Jail.  In June 2001, the Department again sought to transfer Mr. DuBerry to the Number Three shift, this time at the D.C. Jail.  Mr. DuBerry again requested an accommodation on numerous occasions from supervisory personnel based on his belief that the Number Three shift's schedule interfered with his diabetes treatment regimen.  *Id.* ¶¶ 33-35.  Thereafter, the Department decided to retain Mr. DuBerry on the Number One Shift at the D.C. Jail.

In January 2002, the Department again sought to transfer Mr. DuBerry to the Number Three shift at the D.C. Jail, and Mr. DuBerry twice more requested an accommodation.  *Id.* ¶¶ 38, 40.  Mr. DuBerry also filed a Complaint alleging a violation of equal employment opportunity ("EEO") laws with the Department's EEO Officer.  The Department never responded to Mr. DuBerry's EEO Complaint.  Instead, on February 11, 2002, the Department placed Mr. DuBerry's position on a list of those positions to be included in the third phase of a RIF at the Lorton Central Facility.[2]  The two other non-disabled captains then employed by the Department were not selected for inclusion in the RIF.  On March 1, 2002, the Department sent

_____

[2] In 1997, Congress enacted the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 734 (codified at D.C. Code § 24-101 *et seq.*), calling for the closure of all of the Lorton prison's multiple facilities.  Def.'s Statement of Undisputed Material Facts ¶ 2.  The closure of the Lorton facilities unfolded in several stages beginning in 1998 and continuing through 2004.  *Id.* ¶ 3.  Eventually, the RIF resulted in the separation of more than 2,500 employees.  *Id.*

Mr. DuBerry a letter informing him that his position would be eliminated effective March, 18, 2002.  After receiving the letter, Mr. DuBerry elected to retire on March 18, 2002, in lieu of being involuntarily separated in order to preserve his retirement benefits.

On December 24, 2002, Mr. DuBerry applied for a vacant captain position at the Department.  The Department rejected Mr. DuBerry's application on March 21, 2003, although a draft rejection letter had been composed as early as January 27, 2003.  On February 6, 2003, the Department posted Position Vacancy Announcement No. FL(25)03-05 seeking applicants for six supervisory correctional officers.  The Announcement was open to the general public.  Mr. DuBerry applied for those positions.  The Department rejected his application because it had allegedly determined to cancel the Announcement on April 30, 2003.  On May 8, 2003, the Department posted Position Vacancy Announcement No. FL(25)03-07 again seeking applicants for six supervisory correctional officers.  This time, however, only Department employees were eligible to apply.  The Department promoted six lieutenants into the available captain positions.

Mr. DuBerry filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 3, 2002, alleging that the Department discriminated and retaliated against him because of his disability when it selected him for inclusion in the Lorton RIF.  While the charge was pending investigation, Mr. DuBerry subsequently complained to the EEOC that the Department promoted a non-disabled lieutenant to captain. *See* Pl.'s Reply in Supp. of Summ. J., Ex. 69 (Complainant's Response to EEOC ("DuBerry EEOC Response")).  On July 27, 2004, the EEOC issued a right-to-sue-letter, notifying Mr. DuBerry of the EEOC's determination that it was unable to conclude that the information established any violations of the applicable statutes.  Mr. DuBerry, proceeding *pro se* at that time, filed a Complaint in this Court on September 27, 2004.  By Order dated September 20, 2005, the Court dismissed Mr.

4

DuBerry's ADA and Title VII claims that arose pre-separation because Mr. DuBerry failed to exhaust his administrative remedies with respect to those claims.  The District now moves for summary judgment on all claims, and Mr. DuBerry cross moves for partial summary judgment on his ADA claims.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment.  *Id.*  In addition, the nonmoving party may not rely solely on allegations or

conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*,

9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that

would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

**A.  ADA Claims**

Mr. DuBerry alleges that the D.C. Department of Corrections discriminated and

retaliated against him in violation of the ADA by including him in the RIF and by failing to

rehire him.[3]

---

[3] The District argues that Mr. DuBerry failed to exhaust his ADA claims arising out of the separation and subsequent refusal to rehire.  The Court disagrees.  On December 3, 2002, Mr. DuBerry filed a timely charge with the EEOC alleging disability discrimination and retaliation relating to his March 18, 2002 separation.  On April 11, 2004, while his charge was still being investigated, Mr. DuBerry submitted further information to the EEOC regarding the Department's subsequent decision to promote a non-disabled lieutenant to captain.  *See* DuBerry EEOC Response.  The Court finds that was sufficient to give the EEOC notice that Mr. DuBerry was also complaining about the Department's subsequent refusal to rehire him as a captain.  *See Thrash v. Library of Congress*, No. 04-634, 2006 WL 463251, at *6 (D.D.C. Feb. 24, 2006) (finding exhaustion where *pro se* plaintiff did not specifically allege disability discrimination but described to the EEOC the factual circumstances about which she complained).  Thus, "the exhaustion doctrine's purpose (giving the agency notice of a claim and opportunity to handle it internally) has been amply satisfied." *Brown v. Marsh*, 777 F.2d 8, 15 (D.C. Cir. 1985).

1.  *Proving Discrimination and Retaliation Under the ADA*

The ADA makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  The ADA further prohibits an employer from retaliating against "any individual because such individual has opposed any act or practice made unlawful by this Chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." *Id.* § 12203(a).

In the absence of direct evidence of discrimination or retaliation prohibited by the ADA, this Circuit employs the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (adopting *McDonnell Douglas* framework for ADA retaliation claims); *Duncan v. WMATA*, 240 F.3d 1110, 1114 (D.C. Cir. 2001) (applying *McDonnell Douglas* framework to ADA discrimination claim).  That framework is comprised of three components:  first, the plaintiff must make out a prima facie case of discrimination or retaliation; second, the defendant must produce a legitimate, non-discriminatory or non-retaliatory reason for its employment action; third, the plaintiff must show that the legitimate non-discriminatory or non-retaliatory reason proffered by the defendant is a pretext for discrimination or retaliation.  *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 258, 252-53 (1981).  If the plaintiff makes out a prima facie case of discrimination or retaliation and the defendant fails to produce evidence which, taken as true, would permit the trier of fact to conclude that it had a legitimate, non-discriminatory or non-retaliatory reason for the

employment action, then there is no genuine issue of fact remaining for the trier of fact to determine and the plaintiff is entitled to judgment as a matter of law. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If the defendant carries its burden of producing a legitimate, non-discriminatory or non-retaliatory reason for the employment action and the plaintiff shows that the defendant's proffered reason is a pretext for discrimination or retaliation, then the trier of fact is permitted to infer discrimination or retaliation; the plaintiff is not entitled to judgment as a matter of law. *See id.* at 510-11.

The D.C. Circuit recently clarified in an ADA discrimination case that "the prima-facie-case aspect of *McDonnell Douglas* is irrelevant when an employer has asserted a legitimate, non-discriminatory reason for its decision — as an employer almost always will do by the summary judgment stage of an employment discrimination suit." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (2008). The Circuit instructed that "if an employer asserts a legitimate, non-discriminatory reason for an adverse employment action, the district court must conduct one central inquiry in considering an employer's motion for summary judgment or judgment as a matter of law: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Id.*; *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (when an employer has asserted a legitimate, non-discriminatory reason for the employment action, "the district court need not — *and should not* — decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.") (emphasis in original).

2. *The Department's Proffered Legitimate Reasons*

The Department of Corrections has proffered legitimate, non-discriminatory and non-retaliatory reasons for including Mr. DuBerry in the RIF and for not rehiring him. Joan Murphy, the Department's Rule 30(b)(6)representative,[4] testified that the Department included Mr. DuBerry in the RIF because his Personnel Form 1 indicated that his position was funded through the Lorton Central Facility, which the Department was closing. Pl.'s Mem., Ex. 60 (Joan Murphy Dep. ("Murphy Dep.") at 154-55). Ms. Murphy testified that the source of funding for a Department employee's position is indicated by a four digit "Responsibility Center" code on the employee's Personnel Form 1. *Id.* The Responsibility Center code corresponds to a particular Department facility that funds the employee's position. *Id.* In Mr. DuBerry's case, his April 1, 2002 Personnel Form 1 contained the Responsibility Center Code 0302, the code for the Lorton Central Facility. *Id.* Thus, it is the Department's position that Mr. DuBerry was selected for inclusion in the RIF because his position was associated with the Lorton Central Facility, which the Department was in the process of closing as mandated by the Revitalization Act. This evidence, taken as true, would permit the trier of fact to conclude that the Department had a legitimate, non-discriminatory and non-retaliatory reason for including Mr. DuBerry in the RIF.

Similarly, Ms. Murphy testified that the Department did not rehire Mr. DuBerry because the positions for which he applied were not open to the general public. *Id.* at 270. She testified that in her ten years with the Department, she was not aware of a supervisory

---

[4] Rule 30(b)(6) of the Federal Rules of Civil Procedure provides that when a governmental entity like the D.C. Department of Corrections is named as a deponent, the governmental entity must designate one or more persons who consent to testify on its behalf. Fed. R. Civ. P. 30(b)(6).

correctional officer position being filled with a candidate from outside of the Department. *Id.* at 198-99. She further testified that she thought existing collective bargaining agreements between the Department and its unions might have contractually prevented the Department from hiring Mr. DuBerry for the vacant positions because he was not an existing employee of the Department. *Id.* at 280-83. This evidence, taken as true, would permit the trier of fact to conclude that the Department had a legitimate, non-discriminatory, and non-retaliatory reason for not rehiring Mr. DuBerry.

Mr. DuBerry argues that he is entitled to summary judgment because the Department has failed to articulate a legitimate, non-discriminatory and non-retaliatory reason for selecting him for inclusion in the RIF and for failing to rehire him. Mr. DuBerry contends that the Department's proffered reasons are false. However, the veracity of the Department's proffered reasons go to pretext (discussed below) and are not relevant in determining whether the Department has met its burden of production. *See Hicks*, 509 U.S. at 509 ("In the nature of things, the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment. For the burden-of-production determination necessarily *precedes* the credibility-assessment stage.") (emphasis in original). For purposes of determining whether the Department has met its burden of production, the Court must take the Department's proffered reasons as true. *See id.* (defendant fails to meet its burden of production if it fails "to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a non-discriminatory reason for the adverse action.") (emphasis in original). Moreover, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the

plaintiff." *Id.* Thus, the Department has met its burden of production as to both of the employment actions alleged to be unlawful. Accordingly, Mr. DuBerry's cross motion for summary judgment on his ADA discrimination and retaliation claims will be denied.

### 3. *Mr. DuBerry's Evidence of Discrimination, Retaliation, and Pretext*

"At this point, to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). "All of the evidence" includes evidence of the plaintiff's prima facie case and evidence showing the employer's proffered reasons to be false. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998); *Simpson v. Leavitt*, 437 F. Supp. 2d 95, 101 (D.D.C. 2006). Accordingly, the Court evaluates Mr. DuBerry's prima face case of discrimination and retaliation in addressing the question of whether he has created a genuine issue of disability discrimination and retaliation. *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007).

### a. Evidence of Discrimination

To establish a prima facie case of discrimination under the ADA, Mr. DuBerry must show that he was disabled,[5] qualified for the position,[6] and that the Department included him in the RIF and refused to rehire him because of his disability.[7] *See Swanks v. WMATA*, 179

---

[5] The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2).

[6] The ADA defines a "qualified individual" as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

[7] The Court is not persuaded by the District's argument that Mr. DuBerry did not suffer an adverse employment action because he resigned after he had been notified that he would be included in the RIF. *See, e.g.*, *Johnson v. Maddox*, 230 F. Supp. 1, 10 (D.D.C. 2002) (choice between

F.3d 919, 934 (D.C. Cir. 1999).  Mr. DuBerry has submitted uncontested affidavit evidence that would permit a reasonable jury to conclude that he is disabled under the ADA because his diabetes substantially limits his ability to eat.  *See Branham v. Snow*, 392 F.3d 896, 903-04 (7th Cir. 2004) (reversing summary judgment for employer because trier of fact could conclude that plaintiff's diabetes substantially limited his ability to eat).  For example, Mr. DuBerry is required to follow a strict schedule for eating, blood sugar testing, and exercise that, if not followed, could result in mild and severe bodily reactions, including blurred vision and sweating, as well as circulatory problems, heart disease, kidney failure, blindness, shock, and diabetic coma. DuBerry Aff. ¶ 7.  Mr. DuBerry must test his blood sugar thirty minutes to one hour before and after each meal, and based on the results of those tests, must often alter the content of what he eats.  *Id.* ¶¶ 9, 10.  Mr. DuBerry's strict eating and blood sugar testing schedule requires that he plan the timing and content of his meals in advance and not depart from this schedule.  *Id.* ¶ 11.

The evidence submitted also would permit a reasonable jury to conclude that Mr. DuBerry was qualified to be a Department captain.  Mr. DuBerry received positive performance evaluations while a captain for the Department, including an "outstanding" rating for the 1998-1999 review period and an "excellent" for the 1999-2000 review period.  Pl.'s Memo., Ex. 6 & 7 (Performance Rating Reports).  Indeed, Ms. Murphy testified that she had no reason to believe Mr. DuBerry was not qualified for the captain positions for which he applied because he separated as a captain.  *See* Murphy Dep. at 284.

---

resignation or termination is an adverse employment action).  Nor is the Court persuaded by the District's argument that the Department's failure to rehire Mr. DuBerry was not an adverse employment action.  *See, e.g., Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (failure to hire is an adverse employment action).

12

Finally, there is sufficient evidence in the record to permit a reasonable jury to conclude that the Department selected Mr. DuBerry for inclusion in the RIF and refused to rehire him because of his disability.  Mr. DuBerry's position was selected for inclusion in the RIF only a month after he made his last request for disability accommodation.  While Mr. DuBerry was selected for inclusion in the RIF, the two other non-disabled captains then employed by the Department were not selected for inclusion in the RIF.  *See Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003) (concluding that similar circumstances "would permit a reasonable finder of fact to conclude that [the employer] used the legitimate RIF as an opportunity to terminate [plaintiff] because of his disability.").  In addition, two weeks after the Department rejected Mr. DuBerry's application for Position Vacancy Announcement No. FL(25)03-05 on the asserted basis that the Announcement had been cancelled, the Department reposted the same six vacancies in a new Position Vacancy Announcement No. FL(25)03-07 open only to Department personnel.  Individuals with a lower rank than Mr. DuBerry at the time of his separation were eventually promoted into the positions for which he had applied.

b.  Evidence of Retaliation

To establish a prima facie case of retaliation under the ADA, Mr. DuBerry must show that he engaged in protected activity, that the Department subjected him to an adverse employment action, and that there is a causal link between the adverse employment action and the protected activity.  *Smith*, 430 F.3d at 455.

The record reflects that on numerous occasions Mr. DuBerry made requests for disability accommodation, the last one being just a month before his position was selected for inclusion in the RIF.  Requests for accommodation are "protected activities" within the meaning of the ADA.  *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003);

13

*Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997).  "[A] reasonable finder of fact could infer causation" where less than a month separates the protected activity and the adverse action.  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  Less than a month before the Department selected Mr. DuBerry for inclusion in the RIF, he had filed an EEO Complaint with the Department's EEO Officer about the Department's failure to accommodate his diabetes treatment regimen.  "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity."  *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).

Furthermore, the evidence shows that just over a month after the Department received official notice that Mr. DuBerry had filed a charge of discrimination with the EEOC concerning his separation, the Department decided not to rehire him for a vacant captain position for which Mr. DuBerry had applied.  The record also reflects that after Mr. DuBerry applied for Position Vacancy Announcement No. FL(25)03-05, which had been open to the general public, the Department decided to cancel that Announcement and repost the same six vacancies in a new Position Vacancy Announcement No. FL(25)03-07 limited only to Department personnel.  The Department filled each of those six vacancies with lieutenants, the grade below Mr. DuBerry's grade of captain.  Based on all of this evidence, the Court finds that a reasonable jury could conclude that the Department retaliated against Mr. DuBerry because of his protected activity.

c. <u>Evidence of Pretext</u>

Mr. DuBerry argues that the Department's proffered reason for selecting him for inclusion in the RIF — his April 1, 2002 Personnel Form 1's "Responsibility Center" code of 0302 corresponding to the Lorton Central Facility — could not have been the Department's true reason because at the time the Department selected Mr. DuBerry for inclusion in the RIF he neither worked at nor drew funding from Lorton.  Mr. DuBerry points to his January 29, 2001 Personnel Form 1 — the last Form1 he received from the Department prior to his separation — indicating a Responsibility Center code of 0202 corresponding to the D.C. Jail, where he had been transferred to on December 3, 2000, more than a year before the Department selected him for inclusion in the Lorton RIF.  DuBerry Aff. ¶¶ 28, 30.  The Personnel Form 1 that the Department's Rule 30(b)(6) representative relied on showing a Responsibility Center code of 0302 associated with Lorton was created on April 1, 2002, nearly two months *after* the Department selected Mr. DuBerry for inclusion in the RIF.  *See* Pl.'s Mem., Ex. 45, Personnel Action Form 1 [Dkt. # 62-50].  Because Mr. DuBerry has introduced evidence showing that at the time the Department selected him for inclusion in the RIF he worked at the D.C. Jail, not Lorton, and his Form 1 contained a Responsibility Center code corresponding to the D.C. Jail, not Lorton, the Court finds that a reasonable jury could conclude that the Department's proffered reason is false.

Mr. DuBerry argues that the Department's proffered reason for failing to rehire him — that the positions for which he applied were not open to the general public — is pretextual because the positions were initially open to the general public and, contrary to the testimony of Ms. Murphy, the Department's collective bargaining agreements do not require that the positions be offered only to Department employees.  Mr. DuBerry notes that Ms. Murphy

15

testified that she did not know why, after having received his application, the Department cancelled Position Vacancy Announcement No. FL(25)03-05, which had been open to the general public, and reposted the same six vacancies in a new Position Vacancy Announcement No. FL(25)03-07 open only to Department personnel.  *See* Murphy Dep. at 198-200.  While Ms. Murphy testified that she thought existing collective bargaining agreements between the Department and its unions might have contractually prevented the Department from hiring Mr. DuBerry because he was not an existing employee of the Department, both Position Vacancy Announcements stated that the positions were "NOT in a collective bargaining unit," and the relevant collective bargaining agreements contain no provision precluding the Department from hiring from the general public.

Based on this evidence, the Court finds that a reasonable jury could conclude that the Department's proffered reasons for selecting Mr. DuBerry for inclusion in the RIF and for failing to rehire him are a pretext for discrimination and retaliation.  Accordingly, the Court will deny the District's motion for summary judgment with respect to Mr. DuBerry's ADA claims.

### B. Title VII Claim

Title VII makes it unlawful for an employer to discharge or refuse to hire an individual "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Mr. DuBerry has not produced any evidence showing that the District selected him for the RIF and failed to rehire him because of his race or any other category protected by Title VII.  Accordingly, the Court will grant the District's motion for summary judgment with respect to Mr. DuBerry's Title VII claim.

### C.  Section 1983 Claim

Section 1983 provides a cause of action for persons deprived of their constitutional or federal statutory rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  "In order to hold a municipality liable for civil rights violations of its employees under 42 U.S.C. § 1983, the municipality must have acted in accordance with a 'government policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy.'"  *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) (quoting *Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978)).  It is the plaintiff's "burden to establish that a municipality has a custom or practice abridging [his] constitutional or statutory rights."  *B.R. v. District of Columbia*, 524 F. Supp. 2d 35, 40 (D.D.C. 2007) (citing *Monell*, 436 U.S. at 694).  Thus, "[t]o impose liability on the District under 42 U.S.C. § 1983," a plaintiff "must show not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation."  *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007) (internal quotation marks and citation omitted).

Mr. DuBerry seeks to hold the District liable under Section 1983 for violating his Fifth Amendment due process and equal protection rights.  A threshold issue is whether any official policy or custom of the District of Columbia caused Mr. DuBerry's alleged constitutional deprivations.  *See Monell*, 436 U.S. at 694.  Mr. DuBerry argues that because the Director and other senior officials of the Department of Corrections ultimately approved the Department's employment decisions, including those affecting Mr. DuBerry, the District can be held liable under Section 1983.

17

However, "[a] single incident is insufficient to impose liability against the District of Columbia." *Reed v. District of Columbia*, 474 F. Supp. 2d 163, 168 (D.D.C. 2007). In order to hold the District liable under Section 1983 for the Department of Correction's alleged discriminatory employment practices with respect to Mr. DuBerry, Mr. DuBerry must show that discrimination "was so widespread as to constitute a custom, practice, or policy" of the Department. *Id.* Mr. DuBerry has not produced any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself. The fact that the Department's Director ultimately approved the decision to include Mr. DuBerry in the Lorton RIF does not mean that the Department has an official custom, practice, or policy of discriminating against the disabled in its employment practices. Were it otherwise, nearly every act could impute Section 1983 liability to the government. Accordingly, the Court will grant the District's motion for summary judgment with respect to Mr. DuBerry's Section 1983 claim.

**D.  Section 1981 Claim**

Section 1981 prohibits discrimination on the basis of race in making and enforcing contracts, including employment contracts. 42 U.S.C. § 1981; *McDonald v. Santa Fe Train Transp. Co.*, 427 U.S. 273, 285-86 (1976). However, Section 1981 does not prohibit discrimination on the basis of disability. *See Davies v. Polyscience, Inc.*, 126 F. Supp. 2d 391, 392-93 (E.D. Pa. 2001) & cases cited therein. As discussed above with respect to Mr. DuBerry's Title VII claim, Mr. DuBerry has not produced any evidence showing that the Department discriminated against him because of his race. Accordingly, the Court will grant the District's motion for summary judgment with respect to Mr. DuBerry's Section 1981 claim.

**E.  D.C. Human Rights Act Claims**

The D.C. Human Rights Act makes it unlawful for an employer to discharge or refuse to hire an individual "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual."  D.C. Code § 2-1402.11(a)(1). The statute further prohibits retaliation against a person "because that person has opposed any practice made unlawful by this chapter, or because that person made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing authorized under this chapter."  *Id.* § 2-1402.61(b).  Employment discrimination and retaliation claims under the D.C. Human Rights Act are analyzed using the same legal framework as federal employment discrimination and retaliation claims.  *See McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007) (discrimination claim); *Howard Univ. v. Green*, 652 A.2d 41, 45 (D.C. 1994) (retaliation claim).

Mr. DuBerry alleges that the Department violated the D.C. Human Rights Act because it discriminated against him on the basis of his disability and retaliated against him for seeking accommodations.[8]  The Court's analysis of Mr. DuBerry's ADA claims controls the resolution of Mr. DuBerry's D.C. Human Rights Act claims, with the caveat that Mr. DuBerry has not moved for summary judgment on his D.C. Human Rights Act claims.  Accordingly, for the reasons discussed above regarding Mr. DuBerry's ADA claims, the District's motion for

---

[8]  Mr. DuBerry has not alleged that the Department violated the D.C. Human Rights Act because it discriminated against him on the basis of his race or age.

19

summary judgment with respect to Mr. DuBerry's D.C. Human Rights Act claims will be denied.

## IV.  CONCLUSION

For the foregoing reasons the District's motion for summary judgment will be granted in part and denied in part and Mr. DuBerry's cross motion for partial summary judgment will be denied.  The Court will grant the District's motion with respect to Mr. DuBerry's Title VII claim, Section 1983 claim, and Section 1981 claim.  The Court will deny the District's motion with respect to Mr. DuBerry's ADA and D.C. Human Rights Act claims.  A memorializing Order accompanies this Memorandum Opinion.


Date:   October 24, 2008                        _____/s/_____
                                                ROSEMARY M. COLLYER
                                                United States District Judge